**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Fridley Public School District, Independent School District 14, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Markwayne Mullin, *et al.*,<br><br>*Defendants*. | Case No. 0:26-cv-01023 (LMP/LIB) |

# SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In its reply, the government makes several new arguments regarding standing and final agency action, none of which work.

## I. Plaintiffs have standing.

**1.** Unable to dispute that a school district might "have standing to seek damages from the [Government] for trespass"—and that DHS's past enforcement actions on school grounds satisfy the "'harm-defining element'" of a common-law trespass—the government now retreats to a narrower position: that the districts cannot seek "prospective" relief to prevent the "same injury" in the future. Gov't Reply 4, Dkt. 122 (quoting *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 420 (4th Cir. 2025)). But Article III draws no such distinction. Yes, a plaintiff must have standing for "each form of relief sought." *Id.* (quoting *Holmes*, 156 F.4th at 420). But "[i]f a plaintiff has a past injury-in-fact, meets the other requirements of standing, and shows that he faces a real and immediate threat that he would again suffer similar injury in the future, then he has standing to seek injunctive or declaratory relief." *Roberts v. Thompson*, 176 F.4th 1045, 1053 (8th Cir. 2026) (cleaned up). Future actions on school property would be injuries for the same reason the past intrusions were.[1]

[1] In a drive-by line, the government claims without any support that the school districts' parking lots are "open to the public." Gov't Reply 4. That is both demonstrably false, Ex. 27, Lewis Decl. ¶ 10, Dkt. 107-27, and irrelevant to standing, Pls.' Reply 5 n.2, Dkt. 119 (public's authorization to enter land is a defense to a trespass suit, not a "harm-defining element").

The government suggests that Plaintiffs cannot rely on such injuries because Plaintiffs do not assert a common-law trespass claim. Gov't Reply 3. But injury-in-fact does not depend on the cause of action the Plaintiffs assert: A plaintiff suffers a cognizable injury "so long as their *harm* is similar to the harm protected by a common-law cause of action." *Holmes*, 156 F.4th at 424; *see Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 554 (8th Cir. 2015) ("It is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." (citation omitted)). In *Golan v. FreeEats.com, Inc.*, for instance, the plaintiffs had standing to assert federal statutory claims because they suffered harm with "a close relationship to the types of harms traditionally remedied by tort law, particularly the law of nuisance," even though they did not bring a common-law nuisance claim. 930 F.3d 950, 958 (8th Cir. 2019).

**2.** The government next argues that a recent district court case, *Tincher v. Mullin*, No. 0:25-cv-4669, 2026 WL 2797318, at *8 (D. Minn. Sept. 18, 2026), shows that Plaintiffs lack standing because Operation Metro Surge "concluded" after they filed this case. Gov't Reply 5–6. But "standing is to be assessed as of the filing of the complaint." *Tincher*, 2026 WL 2797318, at *4–5. In *Tincher I*, the court found that the plaintiffs had standing as of the time of their original complaint, filed during Metro Surge. *Tincher v. Noem*, 816 F. Supp. 3d 931, 962–65 (D. Minn. 2026). They later filed an amended complaint

after Metro Surge concluded. 2026 WL 2797318, at *2. Reasoning that they had to establish standing as of the date of the amended complaint, the court held that they could not because they no longer faced an "imminent risk of harm." *Id.* at *7–8. Here, in contrast, Plaintiffs filed their only complaint at the peak of Metro Surge. So *Tincher I*, which found standing, is more on point.[2]

**3.** On financial injury, the government suggests that a recent Supreme Court stay order precludes standing to challenge an "internal directive" from an agency head that does not impose "obligations on the [plaintiffs]." Gov't Reply 9–10 (quoting *Trump v. California*, 609 U.S. 1032, 1035 (2026)). Not so. As the D.C. Circuit reiterated after *Trump v. California*, challenges to internal "policy memos" that "direct agency officials on whether, how, and when to exercise their authority" are "commonplace." *Mennonite Church USA v. DHS*, No. 25-5209, 2026 WL 3132807, at *10 (D.C. Cir. Oct. 20, 2026).

Indeed, in September, the Supreme Court held that a voter had standing to challenge an internal government directive to send certain records to state election officials, even though it did not impose obligations on the plaintiff

[2] Plaintiffs have an even stronger case for standing here. Unlike in *Tincher*, they need not show that any specific individual would be arrested or assaulted in the future. They have a sufficiently imminent injury if it is likely that DHS will engage in "even one" enforcement action on their property, that even one student would be absent because of enforcement near schools, costing them even "one dollar" of revenue, or that even one EdMN member would face arrest at or near a school. *Mennonite Church*, 2026 WL 3132807, at *10 (quoting *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025)).

voter. *DHS v. League of Women Voters*, No. 26A308, 2026 WL 2879700, at *2 (U.S. Sept. 25, 2026) (finding standing because third-party *state* would likely require voter to provide more records if DHS program returned inaccurate information); *see also Ctr. for Taxpayer Rts. v. IRS*, 190 F.4th 990, 1001–02 (D.C. Cir. 2026) (standing to challenge internal IRS procedure). And the Court did not claim to overrule cases like *Bennett v. Spear*, which found standing to challenge an interagency directive with downstream effects on the plaintiff, who was not directly regulated. 520 U.S. 154, 167–70 (1997).

The plaintiffs in *Trump v. California* failed where these other plaintiffs succeeded because they relied on an "unduly long 'chain of inferences'" to show imminent injury. 609 U.S. at 1036 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414–15 & n.5 (2013)). The first challenged order directed DHS to send states citizenship lists only to the extent "feasible," "appropriate," and "consistent with applicable law," meaning that the Court had to guess "not only about whether the Secretary will act before the midterms, but also about the shape that any such action might ultimately take." *Id.* Here, in contrast, the Court need not "speculate that harm will eventually materialize," *id.*: DHS had already intruded on school property, scared students away from school, cost the districts money, and arrested EdMN's members by the time Plaintiffs filed suit, raising a substantial risk those harms would recur.

The Court also held the plaintiffs lacked standing to challenge another order—to "'prioritize' the investigation and prosecution of those who violate existing federal laws by issuing ballots to ineligible voters." *Trump v. California*, 609 U.S. at 1037. But as the D.C. Circuit recently recognized, the Huffman Memo does not just set priorities; it frees DHS staff from "a binding directive to ICE agents and CBP officers" that "constrain[ed] agency discretion." *Mennonite Church*, 2026 WL 3132807, at *11. Thus, unlike in *Trump v. California*, "Plaintiffs here do not seek to change the Administration's overarching enforcement priorities." *Id.*

**4.** The government also newly suggests that Fridley Schools' financial losses are not injuries because (it implies) the district may offset some of its losses through "declining enrollment revenue." Gov't Reply 11. But "standing analysis is not an accounting exercise"; a plaintiff need only show a "negligible" financial loss. *Iowa v. Wright*, 154 F.4th 918, 938 (8th Cir. 2025). Dr. Lewis's uncontroverted declarations certainly show such a loss. Lewis Suppl. Decl. ¶¶ 4–5, Dkt. 120-5; Lewis Decl. ¶¶ 35–37. That school districts may apply to the state to mitigate some of it (*see* Gov't Reply 11) is equally irrelevant. "Such a need to take affirmative steps to avoid risk of harm constitutes a cognizable injury supporting standing." *League of Women Voters*, 2026 WL 2879700, at *2 (cleaned up). And in any event, the government does not even address the loss

of meal reimbursements, which inflicts a separate financial loss each day a student is absent. Lewis Decl. ¶ 37.[3]

**5.** The government next suggests that Plaintiffs' harms are not traceable to the Huffman Memo because Plaintiffs lack evidence that the underlying enforcement actions were "possible" to avoid, such that the Mayorkas Memo would have permitted them even if binding. *See* Gov't Reply 11. Plaintiffs submitted ample such evidence. Witnesses to many of the enforcement actions around Fridley schools and nearby districts observed no emergency circumstance.[4] The government later admitted it did not even have probable cause to arrest EdMN member Christina Rank at school. Rank Decl. ¶ 22 & Attachment. And it is hard to imagine what exigency would require DHS to stage operations at Fridley schools twice in the same day. Lewis Decl. ¶¶ 7, 10, 12. Nor is there any reason to think DHS would have limited actions near schools to those permitted by the Mayorkas Memo after it repealed that memo. The point of the repeal was to "free" DHS to enforce near schools in circumstances that the Mayorkas Memo prohibited. DHS, *Promises Made,*

---

[3] That more students enrolled at the start of the 2025–26 school year than expected (Gov't Reply 11) is also irrelevant because the financial injuries stem from the subsequent *drop* in enrollment. Lewis Suppl. Decl. ¶ 4.

[4] *See* Ex. 28, Boyd Decl. ¶¶ 7, 11, Dkt. 107-28; Ex. 42, Iverson Decl. ¶¶ 4–8, Dkt. 107-42; Ex. 16, Rank Decl. ¶¶ 9–10, Dkt. 107-16; Ex. 23, Williams Decl. ¶¶ 9–11, Dkt. 107-23; Ex. 51, Anttila Decl. ¶ 9, Dkt. 107-51; Ex. 11, E-V- Decl. ¶ 3, Dkt. 107-11; Ex. 9, C-C- Decl. ¶¶ 4–12, Dkt. 107-9; Ex. 37, Sinicariello Decl. ¶ 4, Dkt. 107-37; Ex. 35, J-S- Decl. ¶¶ 4–5, Dkt. 107-35.

*Promises Kept: President Trump Is Already Securing Our Border and Deporting Criminal Aliens* (Jan. 26, 2025), https://perma.cc/9YZA-G9PZ ("Jan. 26 DHS Press Release").

Indeed, if there were an exceptional reason to conduct these operations at schools, the government would have provided it. But the government "has never directed [the court] to evidence" in the "record refuting [plaintiffs'] factual claims. Nor has it submitted a rebuttal affidavit." *Clean Wis. v. EPA*, 964 F.3d 1145, 1160 (D.C. Cir. 2020). So it "has not generated a factual dispute" regarding whether the identified enforcement actions would have occurred under the Mayorkas Memo. *Id.* In fact, when a party "fails to produce highly probative evidence that it could readily obtain if in fact such evidence exists," *Rennenger v. Aquawood, LLC*, 183 F.4th 997, 1005 (8th Cir. 2026) (cleaned up), "that failure gives rise to an inference that the evidence is unfavorable to him," *Langford v. Norris*, 614 F.3d 445, 462 (8th Cir. 2010) (cleaned up).

And even putting aside the specific enforcement actions at Plaintiffs' schools, the removal of limits on such operations makes them more likely to occur. In *Mennonite Church*, the district court did not find that the Mayorkas Memo would have forbidden the past enforcement actions near the plaintiffs' churches, but the D.C. Circuit still found they had standing. 2026 WL 3132807, at *4, *12. The same logic applies equally here.

## II. The Huffman Memo is final agency action.

**1.** Although the government acknowledges that the Mayorkas Memo imposed an express "obligation," ICE_AR045, it now argues that this "'obligation' carries no consequences for the DHS agent who purportedly ignores said obligation," Gov't Reply 21. But surely the government does not mean to suggest that DHS agents who ignore obligations imposed by the Secretary of Homeland Security would face no consequences. Instead, the government appears to mean that the obligation was not really binding because people injured by a violation could not sue to enforce it. *See* Gov't Reply 20 (arguing that "an arrest made in violation of the Mayorkas Memorandum would not have been subject to legal challenge on that basis").

This new argument is wrong for two reasons. First, when "a policy statement or set of enforcement guidelines impose binding limitations on the exercise of its enforcement discretion," it is judicially enforceable under the APA. *GoJet Airlines, LLC v. FAA*, 743 F.3d 1168, 1173 (8th Cir. 2014); *accord Mennonite Church*, 2026 WL 3132807, at *11. Second, an agency policy need not be enforceable in court to bind the agency and qualify as a final agency action. *See Teva Pharms. USA, Inc. v. Kennedy*, 187 F.4th 587, 600–01, 611 (D.C. Cir. 2026) (guidance document was final agency action even though court would have no jurisdiction to enforce it in particular applications).

Indeed, the rescission of the Remain-in-Mexico policy was final even though no one suggested that a migrant could sue to enforce it. *Biden v. Texas*, 597 U.S. 785, 808 (2022). Contrary to the government's claim, that rescission did not alter "asylum seekers' rights at the border." Gov't Reply 20. It just returned to the status quo ante, in which DHS returned migrants to Mexico on an "ad-hoc basis," rather than categorically. *Biden*, 597 U.S. at 792.[5] The policy was final agency action because it "bound DHS staff," not because it gave anyone enforceable rights. *Id.* at 808 (cleaned up).

**2.** Even as the government defends the Huffman Memo as a decision to do away with "bright line rules," Gov't Reply 24, it now suggests the repealed rule—to avoid sensitive-locations enforcement "'to the fullest extent possible'"—was not "specific" enough to bind the agency, *id.* at 21 (quoting ICE_AR044). But Congress has used precisely the same language to bind agencies, and the Supreme Court and Eighth Circuit have found it provides meaningful standards that cabin agency discretion. *See Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776, 787 (1976) (environmental statute's directive to consider environmental impacts "to the fullest extent possible" is a

[5] *See also Texas v. Biden*, 20 F.4th 928, 948–49 (5th Cir. 2021) (explaining that the challenged rescission "did not end DHS's statutory authority" to "conduct returns") (cleaned up); Br. of United States 30, *Texas v. Biden*, 2021 WL 4445096 (5th Cir. Sept. 20, 2021) ("The June 1 Memorandum did not impose a legal norm or limit the scope of DHS's authority to use Section 1225(b)(2)(C) in the future, including by making returns on an ad-hoc basis.").

"deliberate command"); *Minn. Pub. Int. Rsch. Grp. v. Butz*, 498 F.2d 1314, 1320 (8th Cir. 1974) (same statute set meaningful standard for review).

Likewise, an agency policy that places "constraints on its discretion" binds agency staff even if it leaves room to exercise that discretion. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1028–29 (8th Cir. 2003) (manual that set general standards for river management was binding); *Mennonite Church*, 2026 WL 3132807, at *11 ("a guidance document that leaves in place both legal authorities and enforcement discretion is still a binding directive" (quotation marks omitted)). Indeed, in the seminal *Bennett v. Spear* itself, the Court found the biological opinion was a final agency action even though the recipient agency could "deviate" from it by "articulating . . . its reasons for disagreeing" with it. 520 U.S. at 169 (brackets omitted); *see also Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000) (guidance that prescribed "multi-factor, case-by-case analysis" was binding final action).

The Mayorkas Memo's "obligation" to avoid sensitive-locations enforcement "to the fullest extent possible" and "at all times" was no less binding. ICE_AR045. Its list of "limited circumstances" in which such enforcement was not "possible" to avoid—including "imminent" risks of physical harm and national security threats—further delimited that narrow exception. *Id.* That the list was not "exhaustive" (Gov't Reply 19) did not make the core obligation nonbinding. ICE_AR045. Indeed, such an "illustrative" list

limits the exception to circumstances "of a similarly egregious nature." *United States v. Peters*, 394 F.3d 1103, 1107 (8th Cir. 2005).

**3.** Next, the government dismisses the agency's own characterizations of the Mayorkas Memo—as imposing limits on sensitive-locations enforcement—as "informal public statements" and claims that Plaintiffs "cite no authority" showing they matter. Gov't Reply 21. But the statements at issue—on ICE's website, in two different press releases, and in the Huffman Memo itself—are hardly "informal." *See* Jan. 26 DHS Press Release; Pls.' Reply 14–15; Pls.' Mem. 23, Dkt. 108; *see also CropLife Am. v. EPA*, 329 F.3d 876, 878–79 (D.C. Cir. 2003) (statement in press release was binding). And Plaintiffs have cited ample authority that an agency's "own characterizations" of a policy may show that the policy is binding and final. *Iowa League of Cities v. EPA*, 711 F.3d 844, 862 (8th Cir. 2013); *see also CropLife Am.*, 329 F.3d at 881 ("[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding, *or* is applied by the agency in a way that indicates it is binding." (emphasis added) (citation omitted)).

***

The Court should deny the government's motion and grant summary judgment vacating the Huffman Memorandum.

Respectfully submitted,

Dated: November 4, 2026

*/s/ Sean Ouellette*

**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
(202) 322-1959
Sean Ouellette* (DC Bar 1741535)
Elena Goldstein* (DC Bar 90034087)
Paul R.Q. Wolfson* (DC Bar 414759)
souellette@democracyforward.org
egoldstein@democracyforward.org
pwolfson@democracyforward.org

**THE LAW OFFICE OF KEVIN C. RIACH**
Kevin Riach (389277)
125 Main St. SE, Suite 339
Minneapolis, MN 55414
(612) 203-8555
kevin@riachdefense.com

**NILAN JOHNSON LEWIS PA**
Amanda Cialkowski (0306514)
Kathleen Curtis (0388279)
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
(612) 305-7500
acialkowski@nilanjohnson.com
kcurtis@nilanjohnson.com

**ZIMMERMAN REED LLP**
David Cialkowski (0306526)
June Hoidal (033330X)
Michael Laird (0398436)
Jeffrey J. Harrington (0327980)
Molly F. Billion (0402616)
80 South 8th Street, Suite 1100
Minneapolis, MN 55402
(612) 341-0400
david.cialkowski@zimmreed.com
june.hoidal@zimmreed.com
michael.laird@zimmreed.com
jeffrey.harrington@zimmreed.com
molly.billion@zimmreed.com

**Admitted pro hac vice*